**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Johnny Alvarado Sanchez,<br><br>Petitioner,<br><br>-v-<br><br>William Joyce, *Acting New York Field Office Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security*; Markwayne Mullin, *U.S. Department of Homeland Security Secretary*; Todd Blanche, *Acting U.S. Attorney General, U.S. Department of Justice*,<br><br>Respondents. | 2:26-cv-2285<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On April 17, 2026, Johnny Alvarado Sanchez filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus ("Pet."), ECF No. 1.) The Petition argues that ICE detained Mr. Sanchez without notice and opportunity to be heard beginning on February 5, 2026, in violation of his rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Immigration and Nationality Act, 8 U.S.C. 1226(a) ("Section 1226"), and the Administrative Procedures Act, 5 U.S.C. § 706(2)(A) (the "APA"). (Pet. ¶¶ 38–49.) The Petition seeks, among other things, the following relief: (1) a writ of habeas corpus requiring Respondents to immediately release Mr. Sanchez or provide him with a bond hearing under Section 1226(a) within seven days; and (2) attorney's fees and costs under

the Equal Access to Justice Act, 28 U.S.C. § 2412.[1] For the reasons explained below, the Petition is GRANTED in part.

Respondents are federal government officials named in their official capacities and a federal government agency: (1) William Joyce, the Acting Director of the New York Field Office of ICE's Enforcement and Removal Operations division; (2) Markwayne Mullin, Secretary of the Department of Homeland Security; (3) Todd Blanche, Acting Attorney General; and (4) the Department of Homeland Security.

In response to the Petition, Respondents provided a letter in which they "submit[] that the Court can decide this matter without further briefing or additional hearings" because they rely on and incorporate by reference the arguments they made to this Court in response to the habeas petition in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (Resp. Order to Show Cause ("Response"), ECF No. 9 at 3 (citing Respondents' brief located at ECF No. 14 of *Rodriguez-Acurio*, No. 25-cv-6065).) Respondents also rely on a declaration from Deportation Officer Spiro Vandoros (Decl. of Spiro Vandoros ("Vandoros Decl."), ECF No. 9-1) and two attached exhibits: (1) a Notice to Appear issued on October 27, 2004 (ECF No. 9-2); and (2) a Form I-200 Warrant ("Warrant") issued on February 5, 2026, and served on Mr. Sanchez in Central Islip, New York (ECF No. 9-3).

---

[1] The Petition also seeks: (1) an order prohibiting Mr. Sanchez's removal from the Eastern District of New York; and (2) for the Court to assume jurisdiction over this matter. (Pet. at 10–11.) The Court has effectively granted such relief through the issuance of an April 17, 2026 Order to Show Cause, which required Respondents to provide their response to the Petition by April 22, 2026, at the latest, and prohibited Respondents from removing Mr. Sanchez from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 5.)

Respondents argue that ICE's detention of Mr. Sanchez falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Response at 2.) According to Respondents, Section 1225(b)(2) requires Mr. Sanchez's detention, and he has no right to any additional process under the Due Process Clause. Respondents take the position that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

On April 18, 2026, this Court granted the Petition in part and ordered Sanchez's release for the reasons set forth in its prior Opinion and Order in *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274 (E.D.N.Y. 2025), *appeal voluntarily dismissed*, No. 26-219 (2d. Cir. Feb. 25, 2026), in which this Court rejected Respondents' novel and illogical interpretation of Section 1225(b)(2) as contrary to the plain text of the statute and the canons of statutory interpretation, among other reasons. (*See* ECF No. 10 at 2 (incorporating *Rodriguez-Acurio*, 811 F. Supp. 3d 247 in its entirety).). In the Release Order, this Court indicated that it would set forth its reasons for granting Sanchez's request for habeas relief in more detail in a forthcoming order. (ECF No. 10 at 2). Less than two weeks later, the Second Circuit issued *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), which squarely rejects Respondents' interpretation of Section 1225(b)(2) and is binding authority on this Court. Accordingly, for the reasons set forth below, Mr. Sanchez's Petition is GRANTED in part.

## DISCUSSION

### I. Petitioner is Detained Under 8 U.S.C § 1226(a)

Respondents' argument that Mr. Sanchez is seeking admission and is therefore subject to mandatory detention under Section 1225(b)(2) is contrary to the facts of this case and the Second Circuit's holding in *Barbosa da Cunha*, 175 F.4th 61.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. 8 U.S.C § 1226(b)(2). The Second Circuit has definitively held that "the plain meaning of 'seeking admission' in Section 1225(b)(2)(A)" means "presently pursuing lawful entry into the United States," and that "Section 1225(b)(2) therefore applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." *Barbosa da Cunha*, 175 F.4th at 84, 75. In reaching this conclusion, the Second Circuit reasoned:

> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

*Id*. at 69. Thus, the Second Circuit has squarely rejected Respondents' contention that Section 1225(b)(2)(A) applies to any noncitizen who entered the United States without authorization at any time as untethered to the statutory text, structure, purpose, and history, as well as settled interpretation by multiple branches of government.

Here, Mr. Sanchez is not "seeking admission" because he is not "presently pursuing lawful entry in the United States." *Id*. at 84. He is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him on February 5, 2026, Mr. Sanchez had been living in the interior of the United States since

around 2004—more than *20 years*, had applied for asylum, and had two U.S. citizen children. (*See* Pet. ¶¶ 23–26.)

Like the habeas petitioner in *Barbosa da Cunha*, Mr. Sanchez "is an applicant for admission under the statutory definition because he is present in the country and has never been admitted," but "it simply cannot be said that he is 'seeking admission,' as he is not requesting lawful entry into the United States." *Barbosa da Cunha*, 175 F.4th at 74. Accordingly, ICE's detention of Mr. Sanchez is governed by the discretionary detention framework set forth in Section 1226(a)—not Section 1225(b)(2).

Section 1226(a) permits the arrest and detention of a noncitizen pending ongoing removal proceedings, and "pending such a decision," the noncitizen may be released or detained on bond or conditional parole. *See* 8 U.S.C. § 1226(a). However, when ICE seeks to exercise its discretion to detain a noncitizen under 1226(a), the statute and its implementing regulations require ICE to first make an individualized custody determination. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). The statute goes on to specify that, pending a removal decision, the Attorney General "*may* continue to detain the arrested alien" or "*may* release the alien on bond" or on "conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). As other district courts have recognized, "[t]he Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make 'some level of individualized determination.'" *Velesaca v. Decker*, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020) (quoting *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 (1991)); *see also Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (characterizing Section 1226(a) as "a discretionary detention

provision" requiring "an individualized bond determination before a noncitizen may be taken into custody"). Section 1226(a)'s implementing regulations also contemplate that a DHS officer will conduct an "*initial* custody determination," after which a noncitizen may request an Immigration Judge's review of that determination. *See* 8 C.F.R. § 236.1(d)(1) (emphasis added). As such, the plain language of Section 1226(a) and its associated regulations require the provision of an individualized custody determination with respect to any noncitizen detained under the statute.

Section 1226(a)'s implementing regulations further specify the nature of the individualized inquiry that must be provided to the noncitizen. Under DHS regulations, a DHS officer may grant a noncitizen bond or conditional parole pending a final decision in the noncitizen's removal proceedings "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). This regulation contemplates that the noncitizen will be provided an opportunity to be heard *before* detention, because it provides that the noncitizen "must demonstrate to the satisfaction of the officer" that release on bond or parole will not pose a public safety or flight risk. *Id*. (emphasis added); *see Kelly v. Almodovar*, No. 25-cv-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (finding a due process violation where ICE did not allow the petitioner "to make his case" before being detained (citing 8 C.F.R. §§ 1236.1(c)(8); 236.1(c)(8)). If a DHS/ICE officer detains a noncitizen under Section 1226(a) after conducting an individualized inquiry into flight risk and danger, the noncitizen may appeal the custody determination to an Immigration Judge, who must conduct that inquiry anew. *See* 8 C.F.R. §§ 1003.19(a), (d), (e) (providing that immigration judge review of custody and bond determinations will be "separate and apart from,

and shall form no part of, any deportation or removal hearing or proceeding"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) ("If DHS ultimately decides to detain a noncitizen after conducting such an assessment, that noncitizen may appeal said decision before an immigration judge, who must consider the same factors." (citing 8 C.F.R. §§ 1003.19(d), (e))). The noncitizen also has a right to appeal the Immigration Judge's decision to the Board of Immigration Appeals. *See* 8 C.F.R. § 1003.19(f) ("An appeal from the determination by an Immigration Judge may be taken to the Board of Immigration Appeals[.]").

Accordingly, in exercising *discretionary* authority to detain a noncitizen under Section 1226(a), ICE must conduct an individualized inquiry into whether the noncitizen presents a flight risk or danger to persons or property, provide the noncitizen an opportunity to be heard *before* ICE makes its custody determination, and afford an appeal of the initial custody determination. *See, e.g.*, *Chipantiza-Sisalema v. Francis*, No. 25-cv-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (holding that "if ICE wishes to detain a noncitizen under the detention authority provided by 8 U.S.C. § 1226(a), ICE must allow the noncitizen" an opportunity to "'demonstrate to the satisfaction of the officer that release would not pose a danger to property or persons, and that the noncitizen is likely to appear for any future proceeding'" (brackets omitted) (quoting 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8))); *Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *3 (E.D.N.Y. May 22, 2026) ("In practice, [Section 1226(a)] affords Petitioner 'an initial custody determination *before* exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk." (emphasis in original)); *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) ("Distinct from mandatory detention under section 1225(b)(2)(A), section 1226(a) affords [the petitioner] an initial custody determination before

exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk.").

## II. Respondents Violated Petitioner's Right to Procedural Due Process

For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Sanchez has a liberty interest in being free from detention that is afforded procedural due process protection. ICE's detention of Mr. Sanchez without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. (Response at 4; *see also Rodriguez-Acurio*, 811 F.Supp.3d at 313–15 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).) [2]

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Sanchez from February 5, 2026 to April 18, 2026, violated his Fifth Amendment rights to procedural due process for the same reasons as those set forth in this Court's decision in *Rodriguez-Acurio*.

---

[2] Respondents do not discuss *Thuraissigiam* in any way. Nevertheless, because they incorporate by reference their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

Here, ICE's detention of Mr. Sanchez without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures—or lack thereof—used to detain Mr. Sanchez on February 5, 2026, because Respondents detained him without conducting any individualized inquiry into whether he posed a risk of flight or danger and without providing him a pre-deprivation opportunity to be heard, whether before a DHS or ICE officer or an immigration judge.

Deportation Officer Spiro Vandoros attests that on the morning of February 5, 2026, he "was aware of [Mr. Sanchez]'s appointment with Nassau County Probation" scheduled for later that day and subsequently "conducted record checks that morning to confirm [Mr. Sanchez]'s identity," which "revealed that [Mr. Sanchez] did not have lawful status in the United States." (Vandoros Decl. ¶ 18.) Vandoros does not attest that he reviewed any additional information about Mr. Sanchez or knew anything about him other than the mere fact that he was present in the United States without lawful status. With only this information, "[o]n the morning of February 5, 2026, Acting Supervisory Detention Deportation Officer Michael Damiano completed and signed the I-200 Warrant of Arrest of Alien" and provided Vandoros with the warrant. (*Id*. ¶¶ 19–20.) Vandoros and an unnamed DHS Homeland Security Investigations ("HSI") agent then went to the Nassau County Department of Probation where Mr. Sanchez had a scheduled appointment, approached Mr. Sanchez as he exited the facility, asked for his name and date of birth to confirm his identity, served him with the I-200, and placed him under arrest. (*Id*. ¶¶ 21–24.) Vandoros attests that after arresting Mr. Sanchez and transporting him to the "Nassau County ICE Processing Facility in Central Islip, New York," "[a] *routine risk*

*assessment* was conducted on Petitioner at the time of booking." (*Id.* ¶¶ 26–27 (emphasis added).) However, Vandoros fails to describe who conducted this "routine risk assessment" or what it entailed, and whether any DHS or ICE officer conducted *any* individualized inquiry into whether Mr. Sanchez poses a risk of flight or danger, much less an inquiry involving a pre-deprivation opportunity for Mr. Sanchez to be heard as required by Section 1226(a). Indeed, neither Damiano nor Vandoros spoke to Mr. Sanchez or knew anything about him other than the fact that he was present in the United States without lawful status before Damiano issued an administrative I-200 arrest warrant and before Vandoros and an unnamed HSI agent arrested Mr. Sanchez upon exit from the Nassau County Department of Probation office. (Vandoros Decl. ¶¶ 19–24.) Rather, the record reveals that ICE and HSI detained Mr. Sanchez based purely on his status as a noncitizen without lawful status to remain in the United States. This type of status-based detention is not authorized by Section 1226(a) and gives rise to a high risk of an erroneous deprivation of liberty. Indeed, the Second Circuit has recognized that noncitizens in the United States unlawfully "cannot be said, as a categorical matter, to pose a danger to the community or risk of flight . . . ." ; *Barbosa da Cunha*, 175 F.4th at 95. Moreover, "[t]he problem is that a per se [custody] determination of this sort—on his status alone, rather than any assessment of the factors listed on the [custody determination] form—comports not with 1226(a), but with Respondents' desired policy of mandatory detention under 1225(b)(2)(A) for any noncitizens who entered the U.S. without inspection however long ago." *Pastrana-Beltran*, 2026 WL 1398609, at *2; *see Grace v. Maldonado*, No. 26-cv-3346, 2026 WL 1815931, at *4 (E.D.N.Y. June 24, 2026) (same).

Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Sanchez without notice or an

opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, nothing in the record that suggests that the DHS officers who arrested Mr. Sanchez were acting pursuant to that interest when they arrested him on February 5, 2026, without conducting *any* individualized custody determination to assess whether Mr. Sanchez poses a risk of non-appearance at immigration proceedings or any danger to the community or property. In so doing, Respondents violated the requirements of Section 1226(a) and its implementing regulations and have failed to articulate any governmental interest furthered by proceeding under an incorrect detention statute. Rather, their argument that Section 1225(b)(2) governs Mr. Sanchez's detention "defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in [Jennings *v. Rodriguez*, 583 U.S. 281 (2018)] and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous." *Barbosa da Cunha*, 175 F.4th at 96.

Thus, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Sanchez's detention was required to advance any legitimate government interest—Respondents' detention of Mr. Sanchez with no notice or opportunity to be heard violated his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Sanchez from February 5, 2026 until his release on April 18, 2026 pursuant to this Court's Order was unlawful, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive

interpretation of Section 1225(b)(2). *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres v. Francis*, 2025 WL 3168759, at *5 (S.D.N.Y. 2025).[3]

**III. Remedy**

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 811 F. Supp. 3d at 319–21.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Sanchez from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Sanchez is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant

[3] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Sanchez, that provision is plainly inapplicable to him. Mr. Sanchez is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 811 F. Supp. 3d at 305–08. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at 298–305. Accordingly, ICE's detention of Mr. Sanchez from February 5, 2026 to April 18, 2026 was pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 123, because it is necessary to ensure that the release of Mr. Sanchez is not rendered meaningless.

Additionally, Mr. Sanchez "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8–9 (S.D.N.Y. Nov. 25, 2025) (ordering the government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to Mr. Sanchez's unlawful detention, he was not subject to any release conditions, including but not limited to electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and restoring the status quo ante, *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Sanchez without any release conditions, including but not limited to any electronic monitoring, such as GPS monitoring.

## CONCLUSION

Accordingly, for all of the reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is GRANTED in part. As reflected in the Court's Order dated April 18, 2026, Respondents were ordered to immediately release Mr. Sanchez from custody with all of his belongings that were in Respondents' possession, including but not limited to all identification cards, clothing, and money. (ECF No. 10.) Respondents were also ordered to release Mr. Sanchez without any conditions, including but not limited to the condition of electronic monitoring, whether GPS monitoring or any other form, into the physical care of his counsel or another mutually agreed upon person no later than 9:00 p.m. on April 18, 2026. (*Id*. at 2.) Respondents confirmed that Mr. Sanchez was released from ICE custody without any

monitoring at approximately 7:00 p.m. on April 18, 2026 (ECF No. 11), and that ICE returned all of Mr. Sanchez's property to him on April 20, 2026 (ECF No. 12).

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Counsel for Mr. Sanchez may file an application for attorneys' fees and costs incurred in pursuing this action by **October 21, 2026**.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Sanchez the requested relief, including arguments that his detention in ICE custody violated the APA, are now moot and unnecessary to resolve.

Dated: Central Islip, New York
September 21, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge